**UNITED STATES OF AMERICA**

**vs.**                                                    **Case No. 8:08-CR-313-T-27TBM**

**LARRY P. NARDELLI,**

_____/

## ORDER

**BEFORE THE COURT** are Defendant Nardelli's Motion for New Trial (Dkt. 162), Renewed Motion for Judgment of Acquittal (Dkt. 163), and the Government's responses in opposition (Dkts. 166, 167). Upon consideration, Defendant's motions are DENIED.

### Motion for New Trial

Defendant contends that the "jury verdicts are contrary to the greater weight of the evidence." As to Count One, he argues that although "the evidence adduced at trial clearly established a criminal conspiracy between HUSANI, TRINGALI, and YANCHEK and their well-defined roles as conspirators," "insufficient evidence as to the Defendant's knowing participation in the conspiracy was presented to the jury" (Dkt. 162, p. 7, ¶ 31). As to Counts Three, Four, Ten, Eleven and Thirty-Seven, he contends that the requisite scienter was not sufficiently established. (_Id._ at ¶¶ 32, 36, 37).

Pursuant to Rule 33, Fed. R. Crim. P., a new trial may be granted if required in the interest of justice. In considering the sufficiency of the evidence, the weight of the evidence may be assessed as well as the credibility of the witnesses. _United States v. Hernandez,_ 433 F.3d 1328, 1335 (11th Cir. 2005). However, a verdict may not be set aside merely because the court weighs the evidence and determines that a different result would be more reasonable. The evidence must preponderate heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand.

*United States v. Martinez,* 763 F.2d 1297, 1312-13 (11th Cir. 1985). Rule 33 motions are granted sparingly and only on "exceptional cases." *Id.*

The evidence does not heavily preponderate against the jury's verdicts. Two witnesses, Tringali and Yanchek, admitted their roles in the conspiracy and substantive offenses. Each described the objects of the conspiracy, the manner in which it was carried out, and their respective roles. Both Tringali and Yanchek implicated Nardelli in the scheme. They both described, Nardelli's role in various fraudulent presentations to lenders. While Yanchek's knowledge of Nardelli's overall participation was less than Tringali's, he nonetheless confirmed and corroborated that Nardelli was a knowing participant in the scheme.

The evidence established, for example, that Nardelli was present during one or more of Tringali's conversations with various loan officers, in particular Jeffrey Hackett, Mercantile Bank's representative, during which the equity requirements of the mortgage loans were discussed. During that meeting, Tringali falsely represented to Hackett that he would use a § 1031 property exchange for the deposit.

Tringali gave his falsified financial statements to Nardelli for presentation to various lenders. Tringali testified that Nardelli was aware of the fictitious $ 6.5 million escrow deposit held by Yanchek. Circumstantial evidence corroborated Tringali's testimony about Nardelli's knowledge of the fictitious escrow deposit. For example, Yanchek corresponded with a lender regarding the $34.2 million Steeplechase sales contract and falsely confirmed the $6.5 escrow deposit. Nardelli was copied on that letter. (Ex. 16(a)).

The evidence demonstrated that Nardelli asked to have his company, Elba International, execute the "sham" $35 million purchase offer for the Lindsey property, which referenced the a non-refundable $15 million deposit held by Yanchek. That contract was ultimately presented to Bank

-2-

Atlantic. Tringali's testimony described the "sham" Elba International contract executed by Bobby Perkins at Nardelli's direction, identifying Nardelli's email to him referencing the fictitious $15 million escrow deposit with Yanchek. (Ex. 17(b)). This evidence demonstrated Nardelli's knowing participation in the overall scheme. Robert Perkins' testimony confirmed the execution of the sham Elba contract, corroborating Tringali's testimony.

Further, Nardelli was copied on emails and correspondence referencing the fictitious escrow deposits supposedly held by Yanchek. (Ex. 17(m)). Moreover, he actively sought Yanchek's confirmation of the fictitious escrow deposits. Yanchek testified that Nardelli asked him to confirm to SunTrust that Yanchek held a $15 million escrow deposit on the Capital Five/G & T contract. (Ex. 17(a)). Yanchek falsely confirmed that through correspondence to SunTrust. (Ex. 35(g)).

Tringali, Yanchek, and Perkins were credible witnesses. Yanchek, although reluctant to acknowledge his culpability in the conspiracy and scheme, unequivocally admitted that he authored the false escrow letter and prepared false and fraudulent closing statements and documents to accomplish the objects of the conspiracy. Robert Perkins' testimony provided persuasive evidence of Nardelli's knowing participation in the scheme and understanding of the manner in which it was successfully carried out.

After re-evaluating and weighing the evidence and considering the credibility of the witnesses, this Court cannot conclude that a miscarriage of justice has resulted from the jury's findings of guilt as to the six counts on which Nardelli was convicted. Those verdicts are not contrary to the clear weight of the evidence.

### Ineffective Assistance of Counsel

Defendant also alleges ineffective assistance of trial counsel as a ground for a new trial. The Court acknowledges the awkward posture Defense counsel finds himself in, anticipating his client's

complaints about his performance and preserving those complaints in the motion. However, there is not even an arguable basis for this Court to find that counsel was ineffective. Counsel zealously advocated on behalf of his client, effectively cross examining the Government's witnesses and bringing out inconsistencies and weaknesses in the Government's evidence. Utilizing those weaknesses and inconsistencies, he presented a credible argument to the jury that the Government's proof was lacking. The effectiveness of counsel's efforts is demonstrated by his success in convincing the jury that the Government had not proven his client's guilt beyond a reasonable doubt as to Counts Two and Nine. There was certainly evidence supporting those counts which the jury apparently rejected as insufficient.

As the only issue presented is counsel's trial performance, this Court may evaluate counsel's performance from the unique perspective of having observed that performance.[1] From pre-trial proceedings incident to counsel's motion to withdraw, it was apparent that Defendant Nardelli had certain misgivings about counsel's anticipated trial strategy and counsel's determinations with respect to certain defense witnesses and evidence. The Court conducted a lengthy hearing *in camera* to ascertain the merits of counsel's motion to withdraw, and specifically, the merits of Defendant's concerns about counsel's strategies and readiness for trial.

It was apparent to this Court, as it found then and reiterates now, that counsel was diligently preparing for trial. He had consulted with Defendant, made all discovery available to Defendant and

---

[1] *Friedman v. United States,* 588 F.2d 1010, 1015 n.7 (11th Cir. 1979)("Nevertheless, the Supreme Court has, by implication, allowed that District Judges may 'draw upon (their) own personal knowledge or recollection'" in passing upon factual allegations in § 2255 petitions that pertain to events that occurred in their presence. (Citations omitted). Here, the only issues is counsel's actual trial performance. As this Court presided over the trial, it may dispose of the issue through its observations. *Id.* at 1016.

had considered and was continuing to consider alternative defense strategies, including possible defense witnesses. During the hearing, counsel described a definitive defense strategy of challenging the strength and sufficiency of the Government's proof, and the potential harm in calling certain defense witnesses. In an abundance of caution, to afford additional time for counsel and Defendant to confer, as well to afford Defendant additional time to seek privately retained counsel, if he so choose, the trial was continued.

During trial, as discussed, counsel's strategy was effectively pursued, resulting in not guilty verdicts on two counts. Before the defense rested, an *in camera* hearing was conducted with counsel and Defendant to confirm that Defendant's decision not to testify was made knowingly and voluntarily. Defendant confirmed his decision not to testify. In sum, this Court finds that counsel's trial performance and trial strategy was objectively reasonable and well within the wide range of professionally competent assistance.

Defendant must show that counsel's performance fell below constitutional standards and that his defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant must demonstrate that counsel's performance was objectively unreasonable and that a reasonable probability exists that the outcome would have been different absent the deficiency. *Id.* at 691. Defendant must demonstrate that counsel's errors were so serious that he was deprived of a fair trial, a trial whose result is reliable. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998)(citing *Strickland*, 466 U.S. at 687).

A review of an ineffective assistance of counsel claim is viewed from the perspective of defense counsel, and the facts must be considered "as they were known to counsel at the time of the representation." *Caderno v. United States,* 256 F.3d 1213, 1217 (11th Cir. 2001), *cert. denied,* 534 U.S. 1167 (2002) (quoting *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992)). In

assessing a lawyer's performance, there is a strong presumption that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "Our role in reviewing an ineffective assistance claim is not to 'grade' a lawyer's performance; instead, we determine only whether a lawyer's performance was within 'the wide range of professionally competent assistance.'" *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 690). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Id.* (citing *Chandler*, 218 F.3d at 1315); *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)(Counsel's performance strongly presumed to have been reasonable and adequate, and "great" deference must be shown to counsel's choices dictated by reasonable trial strategy.)

More specifically, counsel's trial strategy will not be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (quoting *Strickland v. Washington,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15. Here, Defendant is unable to establish either prong of the *Strickland* analysis. Counsel presented a reasonable trial

strategy in his questioning of witnesses and argument to the jury. Any claim of ineffective assistance based on trial strategy necessarily fails. *See Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995).

## Motion for Judgment of Acquittal

A post trial motion made pursuant to Rule 29(c) is resolved by viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Williams*, 390 F.3d 1319, 1323 (11th Cir. 2004). The issue is whether a reasonable jury could find that the evidence established guilt beyond a reasonable doubt. *Id.* Juries may choose between reasonable constructions of the evidence. *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 1324.

Defendant's Rule 29(a) motion made after the Government rested was denied. In denying that motion, this Court summarized facts established by the evidence which supported the Government's case, applying the standards applicable to a Rule 29(a) motion. The defense did not present any evidence. For the same reasons articulated by the Court in denying Defendant's Rule 29(a) motion, the instant Rule 29(c) motion is likewise denied.

**DONE AND ORDERED** in chambers this _23rd_ day of March, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record